## STATE v. PENNY.

1. Under an indictment charging the offense to have been committed in the county where the indictment was found, a verdict of guilty establishes as true the fact so charged, and this court cannot disturb such finding.

2. The penalties prescribed by the act of 1878, section 16, (16 *Stat.* 420,) for crossing the bar, when entering port, without a pilot, or a signal for a pilot worn, applies to masters bringing their own vessels into port.

3. The statute prescribing a system of pilotage for the ports of this State, requiring the employment of licensed pilots, and establishing the fees to be paid them by incoming and outgoing vessels, does not conflict with any of the provisions of the constitution of the United States.

4. The offense of crossing the bar without a pilot, or pilot signal worn, under section 16 of the act of 1878, being less than felony and punishable by fine not exceeding $100, is not within the jurisdiction of the Court of General Sessions.

5. An objection to the jurisdiction of the court below, although raised for the first time in this court, must be considered and determined.

Before ALDRICH, J., Charleston, June, 1882.

This was an indictment against S. J. Penny for a violation of the act of 1878 (now section 1275 of the General Statutes of 1882), committed on April 27th, 1881. The opinion states the case.

*Mr. W. M. Thomas,* for appellant.

*Mr. Solicitor Jervey,* contra.

April 19th, 1883. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. The defendant was indicted under the act of 1878, entitled, "An act to regulate the pilotage at the port of Charleston." The indictment charged "that on the 27th of April, 1881, at Charleston bar, in the county of

Charleston, the defendant, not having a license as a pilot of the bar and harbor of Charleston, of the board of commissioners of pilotage for the port of Charleston, did unlawfully presume to bring into the aforesaid port, and did unlawfully bring into the aforesaid port a certain vessel, to wit: the schooner William B. Herrick, of which he was master, and which had to cross the bar, there being then and there, on said schooner, no signal for a pilot—against the form of the statute," &c. Upon trial he was convicted.

He then moved in arrest of judgment and for new trial on the grounds stated in the exceptions for this appeal, which motion being overruled the appeal was taken:

1. "Because the court had no jurisdiction over the alleged misdemeanor: (1). It having been done on the high seas and within the exclusive jurisdiction of the United States District Court sitting in admiralty; (2). It having been done outside of Charleston county; (3). By a person not subject to the State laws.

2. "Because the proper interpretation of the statute of 1878 does not apply to masters of their own vessels.

3. "Because the statute of 1878 is in violation of § 4237, *U. S. Rev. Stat.*, in discriminating between vessels of this State and those of other States.

4. "Because the act of 1878 is unconstitutional, being forbidden by article I., section 9 of the United States constitution as an 'impost duty'; (2). Because it does not come within the purview of the laws regulating pilotage, as permitted by congress, no pilot being pre-supposed in the question; (3). Because it is a restriction on trade and commerce; and (4). Because it is contrary to the law of nations.

5. "Because the indictment does not allege that the schooner Herrick was not a vessel regularly trading between ports of this State."

The first exception, with its three specifications, is based upon the assumed fact that it is apparent upon the record that the venue is laid outside of Charleston county, the county in which the defendant was put upon trial. If the record sustained this allegation then this exception would be fatal, but an inspection

of the indictment shows the contrary. The offense is distinctly and in express terms charged to have been committed in Charleston county; not only so, but that being one of the essential facts involved in the issue, the verdict of guilty rendered by the jury has found this as one of the established facts of the case, and we must take this fact as settled, as under the law regulating the powers of this court we cannot go behind a verdict as to the facts of a case. This view disposes of the first exception with its incidents.

It is urged in the second exception that the act of 1878, under which the defendant has been convicted, does not apply to masters of vessels bringing in their own vessels without a pilot, but to parties who shall presume to act as pilots without a regular license. I was much impressed with this position during the argument, for several reasons not now necessary to be adverted to, but upon a careful examination of the act I am satisfied that it cannot be sustained. It is in direct conflict with the express terms of the act, inconsistent with the proviso to the section under which the defendant was indicted, and out of harmony with the evident intent and purpose of the act.

The sixteenth section of the act now found in section 1275 of General Statutes, provides first, that no person shall be authorized to conduct * * * except a duly licensed pilot, and then provides further, that every person not having such license who shall presume to bring in * * * shall be entitled to no fee or reward, and besides shall be liable to fine of $100 *ad valorem* or be suspended. The words " *ad valorem* " or " be suspended " are not found in the original act of 1878, but have been added in General Statutes, for what purpose it is impossible to conceive, especially the words " *ad valorem.*" The proviso to this section declares that the foregoing prohibition shall not extend to prevent any person from assisting a vessel in distress without a pilot on board, if such person shall deliver up such vessel to the first pilot who shall afterwards come on board and offer to conduct such vessel, and also that the captain and crew of the vessel shall be exempt from the fine for conducting her over the bar without a pilot, if in either of the two last-mentioned cases a signal for a pilot is worn.

Now it can not be doubted that the terms "no persons" in that portion of the act which forbids authority to act except by licensed pilots is universal and without exception in its application. Nothing could be broader or more comprehensive. It prohibits all persons except those expressly authorized and licensed. And the terms "every person" in that portion where the consequences of a violation of the act are affixed, are equally comprehensive. " Every " includes all the separate individuals which constitute the whole, regarded one by one. There can be no exception. In this part of the act the penalty for its violation, is not only the fine of $100, but a forfeiture of all fees, gratuities and rewards for the service rendered is also imposed. Now this part of the penalty could not apply to masters of their own vessels, and the proviso as to these would seem to have been added expressly to show that they were to be included at least as to the fine, because that proviso in terms makes the captain and crew liable to this fine unless a signal for a pilot is worn.

This interpretation of the act is in harmony with its object and purpose. Upon an examination of the whole act regulating the pilotage of the port, its provisions will be found quite stringent and somewhat onerous on the pilots, the intent of the act being that an experienced and perfectly reliable body of pilots shall always be on hand ready and prepared to discharge the important duty of aiding vessels to cross the bar and be conducted with safety into port. The evil to be remedied was the danger resulting from inexperienced and unreliable parties engaged in this work. The remedy was to secure this work to persons who, upon examination  *  *  *  furnished the necessary evidence that they were qualified, and to this end it was thought best to subject every vessel coming in or going out to pilotage, except in the cases mentioned and where the signal is worn, as the pilots would then know the precise field within which they were allowed to operate, and could, therefore, the better prepare themselves for the discharge of their responsible duties. The rule that the evil should be suppressed and the remedy advanced we think sustains the construction hereinabove.

We fail to see the discrimination which is the foundation of the third exception as in violation of the act of congress (§ 4237, *U. S. Rev. Stat.*) The discrimination referred to, if any exists, is found in the thirteenth section of the act which describes a prompt civil remedy for failure to receive on board a pilot. The defendant was not indicted under this section, nor is this a civil proceeding against him. This section is, therefore, not under consideration, and we are not called upon to pass judgment upon the question raised in this exception.

It is urged under the fourth exception that the act of 1878 is, unconstitutional, being in violation of sections 9 and 10, article I. of the constitution of the United States, as an impost duty. It is hardly necessary to do more in reference to this exception than to refer to the well-considered case of *Cooley* v. *Board of Wardens*, 12 *How.* 299, where a similar law in the State of Pennsylvania was discussed in all the phases of "impost duty," "discrimination" and "regulating commerce." In that case the Supreme Court of Pennsylvania had pronounced judgment sustaining the pilotage act then under consideration, holding that it was not, in any of its provisions involved in the cause, at variance with any provision of the constitution or laws of the United States, but was a constitutional and legal enactment. This judgment was affirmed in the Supreme Court of the United States.

There is nothing in the sixteenth section of the act which made it necessary that it should be alleged in the indictment that schooner Herrick was not a vessel regularly trading between the ports of this State. This discrimination is found, as we have already stated, in the thirteenth section, which refers to a different matter.

This disposes of all the questions raised in the exceptions as to the judgment below, and if there was nothing else in the case that judgment should be affirmed. But the appellant in the argument before this court, in his sixth and last ground, interposed a plea to the jurisdiction of the court, claiming that under section 22, article IV. of the constitution, trial justices had exclusive jurisdiction in such cases, it being less than felony and punishable by fine not exceeding $100. Under article I., section 19 of the constitution, also the act of the general assembly

giving jurisdiction to trial justices' courts (*Gen. Stat.* 1872, *p.* 195,) in criminal matters, construed in *State* v. *McKettrick,* 14 *S. C.* 346, we think this objection must prevail. It is true that this question was not passed upon by the Circuit judge, but it involves a question of jurisdiction and may be raised at any time. The court below, in our opinion, not having jurisdiction its judgment cannot be enforced.

And it is the judgment of this court that, for the want of jurisdiction in the court below, the judgment below be reversed.